| | |
|---|---|
| JARED BOBROW (STATE BAR NO. 133712)<br>jbobrow@orrick.com<br>DIANA RUTOWSKI (STATE BAR NO. 233878)<br>drutowski@orrick.com<br>DONNA LONG (STATE BAR NO. 312520)<br>dlong@orrick.com<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>1000 Marsh Road<br>Menlo Park, CA  94025-1015<br>Telephone:    +1 650-614-7400<br>Facsimile:     +1 650-614-7401<br><br>GEOFFREY MOSS (STATE BAR NO. 258827)<br>gmoss@orrick.com<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>777 South Figueroa Street, Suite 3200<br>Los Angeles, CA  90017-5855<br>Telephone:    +1 213-629-2020<br>Facsimile:     +1 213-612-2499<br><br>Attorneys for Defendants<br>CHI XU and HANGZHOU TAIRUO<br>TECHNOLOGY CO., LTD., d/b/a NREAL | COOLEY LLP<br>MICHAEL G. RHODES (116127)<br>(rhodesmg@cooley.com)<br>101 California Street, 5th Floor<br>San Francisco, CA  94111-5800<br>Telephone:    (415) 693-2000<br><br>MARK F. LAMBERT (197410)<br>(mlambert@cooley.com)<br>TIJANA M. BRIEN (286590)<br>(tbrien@cooley.com)<br>JESSIE SIMPSON LAGOY (305257)<br>(jsimpsonlagoy@cooley.com)<br>3175 Hanover Street<br>Palo Alto, CA  94304<br>Telephone:    (650) 843-5000<br>Facsimile:     (650) 849-7400<br><br>Attorneys for Plaintiff<br>MAGIC LEAP, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAGIC LEAP, INC.,<br><br>            Plaintiff,<br><br>     v.<br><br>CHI XU, an individual; HANGZHOU TAIRUO TECHNOLOGY CO., LTD., d/b/a NREAL,<br><br>            Defendants. | Case No. 5:19-cv-03445-LHK<br><br>**JOINT STATEMENT RE THE PARTIES' REQUEST FOR ENTRY OF A PROTECTIVE ORDER**<br><br>Courtroom:         6<br>Magistrate Judge:  Hon. Susan van Keulen |

**I. <u>NATURE OF THE CASE AND PRESENT DISCOVERY DISPUTE</u>**

On June 17, 2019, Plaintiff Magic Leap, Inc. ("Magic Leap") filed its complaint against Defendants Chi Xu ("Xu") and Hangzhou Tairuo Technology Co., Ltd., d/b/a Nreal ("Nreal"). Magic Leap alleges that Xu, a former Magic Leap employee, violated the terms of a "Proprietary Information and Inventions Agreement" ("PIIA") he signed while employed at Magic Leap. Xu founded Nreal after leaving Magic Leap. Magic Leap alleges that Xu's formation of Nreal and Nreal's product development reflects "improper use, disclosure and knowledge of Magic Leap's Confidential Information (including the Confidential Designs) protected under the PIAA." Complaint ¶ 23. Magic Leap's Complaint brings four claims against Xu and Nreal: (1) Xu breached the "Confidential Information" provision of the PIIA, (2) Nreal interfered with Xu's obligations not to misuse Magic Leap's Confidential Information under the PIIA, (3) Xu and Nreal committed constructive fraud against Magic Leap, and (4) Xu and Nreal violated California's Unfair Competition statute. On December 16, 2019, Xu and Nreal filed a motion to dismiss the complaint in its entirety. That motion is fully briefed and pending before the Court.

On December 30, 2019, the Court ordered that "discovery, jurisdictional or otherwise, [was] not … stayed." Magic Leap has issued two sets of discovery requests. The Parties agree that entry of a Protective Order is necessary. The Parties have largely worked through all of their disputes over the terms of a Protective Order. However, despite their good faith meet and confer efforts, the Parties are unable to agree on one issue: whether Designated In-House Counsel of the Parties should have access to materials designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" ("AEO Materials") under the Protective Order.

Defendants' position is that In-House Counsel should not have access to such highly confidential information (*see* Xu and Nreal's [Proposed] Protective Order, attached as **Exhibit A**, and redline showing changes from the Model Order, attached as **Exhibit B**). Plaintiff's position is that one In-House Counsel should have access to such highly confidential information (*see* Magic Leap's [Proposed] Protective Order, attached as **Exhibit C**, and redline showing changes from the Model Order, attached as **Exhibit D**). The Parties otherwise agree on the scope and terms of a Protective Order, and aside from the dispute over In-House Counsel access to AEO Materials, their

proposed orders are otherwise the same. The Parties respectfully request the Court resolve this dispute and enter a Protective Order. The Parties' respective positions on this issue are set forth below.

## II. THE PARTIES' DISPUTE REGARDING THE SCOPE OF A PROTECTIVE ORDER

### A. Summary of Defendants Xu and Nreal's Position

Defendants Xu and Nreal's proposed Protective Order, attached as Exhibit A, would prohibit both sides' In-House Counsel from accessing AEO Materials. These materials, by definition, are "extremely sensitive" and "disclosure … to another Party or Non-Party would create a substantial risk of serious harm." Ex. A ¶¶ 2.8. Here, restricting access is necessary to protect Defendants' most sensitive technical and business information to a self-described competitor. *See* Complaint (ECF No. 1) ¶¶ 18, 32–34.

In the Northern District, there is no presumption that in-house counsel get access to AEO Materials. The Model Protective Order gives access to such counsel only "where deemed appropriate in case-specific circumstances." **Exhibit E** (Model Protective Order) ¶ 7.3(b). The rule reflects that allowing in-house attorneys access to highly confidential and sensitive information of a litigation adversary increases the risks of inadvertent disclosure, particularly where the in-house attorneys may be involved in competitive decision-making. *Pinterest, Inc. v. Pintrips, Inc.*, No. 13-CV-04608-RS (KAW), 2014 WL 5364263, at *3 (N.D. Cal. Oct. 21, 2014) (restricting in-house counsel's access to AEO materials); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984)).

Here, there are no circumstances that warrant a departure from the default rule. Magic Leap describes itself as a competitor of Nreal. Moreover, in the discovery served to date, Magic Leap seeks the most sensitive information about Nreal and its products, including information and documents about (1) Nreal's business plans for all products, (2) exemplar and all prototypes of Nreal's current product, (3) Nreal's current and contemplated development of any product in the broad field of Spatial Computing, including product specifications, and (4) Nreal's product financials. These requests go far beyond the issues in this case and seek to discover Nreal trade

1  secrets. Permitting access—even limited access—to Magic Leap's in-house legal team is especially
2  problematic given the intimate knowledge they have about all aspects of Magic Leap's business,
3  including its road map. *See* **Exhibit F** (Profile of Ana Lang, https://profilemagazine.com/2018/ana-
4  lang-magic-leap/) ("[Magic Leap in-house attorney Ana] Lang says everyone in the legal
5  department must have an almost innate understanding of Magic Leap's technology and product
6  road map, like its devices, the apps and content available, key third-party business relationships,
7  and overall specifications for the product's optimal use."). Given the nature of materials Magic
8  Leap has already requested in discovery and the type of information that may come up in the
9  ordinary course of business, there is a clear risk of inadvertent disclosure because of the difficulty
10 "for the human mind to compartmentalize and selectively suppress information once learned, no
11 matter how well-intentioned the effort may be to do so." *In re Deutsche Bank Trust Co. Americas*,
12 605 F.3d 1373, 1378 (Fed.Cir.2010).

13 Moreover, restricting In-House Counsel access to AEO Materials will not prejudice any
14 party. Courts in the Northern District recognize that relying on outside counsel, especially where
15 counsel has been involved since the beginning of a dispute, is an acceptable alternative to opening
16 a party's most guarded secrets to an adversary. *See Pinterest*, 2014 WL 5364263 at *3 (harm to
17 plaintiff for restricting access to AEO materials was "non-existent"); *Brown Bag Software*, 960
18 F.2d at 1471 (no prejudice where outside counsel had sufficient time and resources to review
19 confidential information and was presumably competent to evaluate the information); *Intel Corp.
20 v. VIA Tech, Inc.*, 198 F.R.D. 525, 529 (N.D.Cal.2000) ("Requiring a party to rely on its competent
21 outside counsel does not create an undue or unnecessary burden."). With experienced outside
22 counsel defending its interests, In-House Counsel access to AEO Materials is unnecessary.

23 **B.  Summary of Plaintiff Magic Leap's Position**

24 As the parties "seeking an order that would limit the disclosure of discovery material to
25 certain persons," the burden is on *Defendants* to "show[] good cause" that such disclosure should
26 be limited. *Newmark Realty Capital, Inc. v. BGC Partners, Inc.,* No. 16CV01702BLFSVK, 2017
27 WL 2591842, at *1 (N.D. Cal. June 15, 2017). Here, Defendants cannot meet their burden. While
28 Defendants attempt to read into the Model Order language a stringent constraint on In-House

1  Counsel access to AEO Material, the Model Order clearly contemplates such access and sets forth
2  the standard for allowing it.  Indeed, courts routinely approve provisions identical in substance to
3  what Plaintiff proposes "because all attorneys are officers of the court, 'the general rule is that
4  attorneys operating under a protective order will properly handle confidential information,'"
5  regardless of whether they are in-house or outside counsel.  *Alza Corp. v. Impax Labs., Inc.,* No.
6  C-03-4032-VRW, 2004 WL 7339748, at *2 (N.D. Cal. June 21, 2004).

In an attempt to avoid this fundamental principle, Defendants conflate Magic Leap's In-House Counsel's *knowledge* of Magic Leap's products and technology, with their *involvement* in competitive decision-making.  *See* Exhibit F (https://profilemagazine.com/2018/ana-lang-magic-leap/).  But the two are plainly distinct and Defendants cannot possibly suggest that the fact that Magic Leap's In-House Counsel are "innate[ly]" familiar with the products of their employer should disqualify them from being able to review AEO Materials.  In order to alleviate Defendants' concerns, and in accordance with the Model Order, Magic Leap's proposal limits disclosure of AEO Materials to a single in-house attorney "who has no involvement in competitive decision-making."  *See* Exhibit E (Model Order) ¶ 7.3.  Nreal would have the same right.  As numerous courts in this district have held, this limitation sufficiently protects against the competitive concerns raised by Defendants.  *See, e.g.*, *Newmark,* 2017 WL at *1 (the "safeguards of Paragraph 7.3 are designed to address the[se] concerns"); *Aristocrat Techs. v. Int'l Game Tech.*, No. C 06-3717 MJJ (JL), 2007 WL 9747649, at *5 (N.D. Cal. Feb. 1, 2007) (granting access to in-house attorney who was not involved in competitive decision-making).  The cases Defendants cite do not warrant a different outcome as each involved a court's rejection of a *specific* in-house attorney who was involved in competitive decision-making, rather than a wholesale bar to all In-House Counsel access.  *See, e.g.*, *Pinterest, Inc. v. Pintrips, Inc.*, No. 13-CV-04608-RS (KAW), 2014 WL 5364263, at *3 (N.D. Cal. Oct. 21, 2014) (analyzing whether particular in-house attorney was involved in competitive decision-making); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th

Cir. 1992) (same); *Intel Corp. v. VIA Tech, Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000) (same).[1]

Access to AEO Materials is important to Magic Leap's prosecution of its case. This case centers around Defendants' access to, and improper use of, Magic Leap's Confidential Information relating to its product designs and plans. (*See* Complaint ¶ 17.) As such, Defendants' documents, in particular, documents relating to Nreal's formation, product design, and development efforts, are essential to a full assessment of the case. Magic Leap anticipates that Defendants will designate nearly all of their product and internal business information as AEO Materials. As such, Magic Leap seeks access to AEO Materials for a single in-house attorney. Access to AEO Materials will enable the in-house attorney to meaningfully assist outside counsel in assessing use of Magic Leap's Confidential Information, developing the facts and legal positions in the litigation, and assessing the possibility of settlement. These are routine functions of In-House and there is no good cause basis to deviate from the norm in this case.

Dated: April 29, 2020

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:    */s/ Jared Bobrow*
Jared Bobrow
Attorneys for Defendants
CHI XU and HANGZHOU TAIRUO
TECHNOLOGY CO., LTD., d/b/a NREAL

Dated: April 29, 2020

COOLEY LLP

By:    */s/ Mark F. Lambert*
Mark F. Lambert
Attorneys for Plaintiff
MAGIC LEAP, INC.

---

[1] In *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir.2010), the court assessed the appropriateness of a patent prosecution bar and remanded for further analysis of whether it was appropriate in that case. As such, it appears entirely inapplicable.

## ATTESTATION

I attest that, under Civil Local Rule 5-1(i)(3), I have obtained concurrence in the filing of this document from all Signatories.

Dated: April 29, 2020

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Jared Bobrow*
Jared Bobrow
Attorneys for Defendants
CHI XU and HANGZHOU TAIRUO
TECHNOLOGY CO., LTD., d/b/a NREAL