UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAGIC LEAP, INC.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CHI XU and HANGZHOU TAIRUO<br>TECHNOLOGY CO., LTD.,<br><br>　　　　　　Defendants. | Case No. 19-CV-03445-LHK<br><br>**ORDER GRANTING MOTION TO<br>DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 22 |

Defendants bring the instant motion to dismiss Plaintiff's Complaint, ECF No. 1 ("Compl."), under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. ECF No. 22. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendants' motion to dismiss for failure to state a claim.

## I.　　BACKGROUND

Plaintiff Magic Leap, Inc. ("Magic Leap") is a Delaware corporation with its principal place of business in Plantation, Florida. Compl. ¶ 4. Plaintiff specializes in the field of "spatial computing, which encompasses augmented, virtual and hybrid (or mixed) reality technology." *Id.* ¶ 2. Defendant Chi Xu ("Xu") resides in Beijing, China. *Id.* ¶ 5. Defendant Hangzhou Tairuo

United States District Court<br>Northern District of California

Technology Co., Ltd. (d/b/a "Nreal"), is a Chinese business entity established in or about early 2017. *Id.* ¶ 6.

Plaintiff alleges that Xu "formerly worked for Magic Leap in its Sunnyvale, California facilities from July 27, 2015 until August 15, 2016." *Id.* ¶ 5. As a condition of his employment, Xu signed a Proprietary Information and Inventions Agreement (the "PIIA"), which "contains a broad prohibition against the use or disclosure of the defined confidential and proprietary information both during and after Mr. Xu's employment" with Plaintiff. *Id.* ¶¶ 10–11; *see id.*, Ex. A ("PIIA"). Plaintiff further alleges that, during Xu's employment with Plaintiff, Xu "had access to much of Magic Leap's Confidential Information spanning all phases of its research and development efforts." *Id.* ¶ 12.

In August 2016, Xu ended his employment with Plaintiff. *Id.* ¶ 19. In 2017, Xu subsequently formed Nreal, a company that quickly released a competing prototype of "lightweight, ergonomically designed, mixed reality glasses," called the Nreal Light. *Id.* ¶ 3, 17. Plaintiff alleges that the Nreal Light is "strikingly similar to confidential Magic Leap designs and confidential and proprietary information to which [Xu] had access as an employee." *Id.* ¶ 3.

Accordingly, on June 17, 2019, Plaintiff filed suit in this Court and named Xu and Nreal as Defendants. *See* Compl. Plaintiff brings four claims: (1) breach of contract, which is alleged against Xu, Compl. ¶¶ 35–42; (2) interference with contract, which is alleged against Nreal, Compl. ¶¶ 43–49; (3) constructive fraud, which is alleged against both Defendants, Compl. ¶¶ 50–57; and (4) unfair competition in violation of California Business and Professions Code section 17200, et seq., against both Defendants, Compl. ¶¶ 58–61.

On December 12, 2019, Defendants filed the instant motion to dismiss the Complaint. ECF No. 22 ("Mot."). On January 30, 2020, Plaintiff filed an opposition. ECF No. 37 ("Opp'n"). On February 27, 2020, Defendants filed a reply. ECF No. 39 ("Reply").

Finally, in support of Defendant's motion to dismiss, Defendants submitted a declaration from Xu. ECF No. 22-1 ("Xu Decl."). Plaintiff objects to "20 out of the 25 paragraphs" in the declaration, which Plaintiff argues do not contain any jurisdictionally relevant facts and instead

United States District Court
Northern District of California

1  impermissibly rebuts Plaintiff's factual allegations from the Complaint.  Opp'n at 5.  Although the

2  Court does not rely upon the Xu Declaration in this Order, the Court agrees that much of the

3  information contained in the declaration may not be considered at this procedural posture.  *See*

4  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (holding that a court

5  "may not consider material outside the pleadings when assessing the sufficiency of a complaint").

6  Accordingly, Plaintiff's objection as to paragraphs 2 through 15 and 21 through 25 of the Xu

7  Declaration is SUSTAINED.

8  **II.    LEGAL STANDARD**

9  **A. Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

10        Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to include "a short

11  and plain statement of the claim showing that the pleader is entitled to relief."  A complaint that

12  fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

13  Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its

14  face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

15  when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

16  the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

17  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

18  possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  For

19  purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the

20  complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

21  party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

22        The Court, however, need not accept as true allegations contradicted by judicially

23  noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look

24  beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

25  motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.

26  1995).  Nor must the Court "assume the truth of legal conclusions merely because they are cast in

27  the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

28

United States District Court
Northern District of California

1  curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere

2  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

3  dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B.  Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(2)**

4

5          In a motion challenging personal jurisdiction under Federal Rule of Civil Procedure

6  12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the

7  burden of establishing that jurisdiction exists.  *See In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th

8  Cir. 2019).  "Where, as here, the defendant's motion is based on written materials rather than an

9  evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to

10  withstand the motion to dismiss.'"  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015)

11  (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)).

12          However, this standard "is not toothless," and the party asserting jurisdiction "cannot

13  simply rest on the bare allegations of its complaint."  *In re Boon Global Ltd.*, 923 F.3d at 650

14  (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).  Thus,

15  courts may consider declarations and other evidence outside the pleadings to determine whether it

16  has personal jurisdiction.  *See id.*  At this stage of the proceeding, "uncontroverted allegations in

17  plaintiff's complaint must be taken as true, and '[c]onflicts between parties over statements

18  contained in affidavits must be resolved in the plaintiff's favor.'"  *Id.* (quoting *Schwarzenegger*,

19  374 F.3d at 800).  On the other hand, courts "may not assume the truth of allegations in a pleading

20  which are contradicted by affidavit."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218,

21  1223 (9th Cir. 2011).

**C.  Leave to Amend**

22

23          If the Court determines that a complaint should be dismissed, it must then decide whether

24  to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to

25  amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose

26  of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."

27  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation

28

*United States District Court*
*Northern District of California*

marks omitted).  When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.   DISCUSSION

Defendants' motion to dismiss argues that each of Plaintiff's four claims should be dismissed under Rule 12(b)(6) for failure to state a claim.  Mot. at 7–19.  As an independent ground for dismissal, Defendants also argue that Plaintiff's claims against Nreal should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.  Accordingly, the Court first considers each of Plaintiff's four claims in turn before considering Defendant's arguments about the Court's personal jurisdiction over Nreal.

### A.   Claim One: Breach of Contract

Plaintiff's first claim, which is asserted against Xu, alleges that Xu breached the parties' Proprietary Information and Inventions Agreement ("PIIA").  Compl. ¶ 3, 35–42.  Defendants argue that the Court should dismiss this breach of contract claim for two reasons.  Mot. at 7–10. First, Defendants argue that the breach of contract claim fails as a matter of law because the contract is an unenforceable restraint against trade.  *Id.* at 7–9 (citing Cal. Bus. & Prof. Code § 16600).  Second, Defendants argue that Plaintiff has not adequately pleaded any breach.  *Id.* at 9– 10.  The Court addresses each argument in turn.

#### 1.   The PIAA Is Plausibly Enforceable

Defendants argue that the Court must dismiss Plaintiff's breach of contract claim because it is unenforceable as an unlawful "restraint of trade" pursuant to California Business and Professions Code section 16600.  Mot. at 7–9.  The Court disagrees that the PIIA is an unenforceable restraint against trade as a matter of law.

United States District Court
Northern District of California

Section 16600 states that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void," subject to statutory exceptions not relevant here.  Cal. Bus. & Profs. Code § 16600; *see also* Cal. Bus. & Profs. Code § 16601–07 (codifying exceptions for non-compete agreements associated with the sale or dissolution of certain businesses and addressing other special circumstances).  Thus, pursuant to section 16600, courts regularly void nonsolicitation and no-hire agreements.  *See, e.g.*, *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 948 (2008) (holding nonsolicitation provision void); *VL Systems, Inc. v. Unisen, Inc.*, 152 Cal. App. 4th 708 (2007) (holding no-hire provision void). Specifically, in *Edwards*, the California Supreme Court confirmed the continued viability and breadth of Section 16600.  The Court explained that by enacting section 16600, the California legislature intended to further "a settled legislative policy in favor of open competition and employee mobility."  44 Cal. 4th at 946.  Thus, section 16600 is a broad prohibition on "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind."  Cal. Bus. & Profs. Code § 16600.

Here, Defendants only challenge Section 2 of the PIIA, which governs an employee's use of confidential information, based upon the broad way that Plaintiff defined "confidential information."  Mot. at 8 (citing PIIA § 2).  For example, Defendants note that the PIIA defines confidential information "to include 'products, 'processes,' 'technology,' 'customer lists and customers,' and 'services,' as well as broader concepts such as 'know-how,' 'business information,' 'processes,' and 'ideas.'"  *Id.*  The PIIA requires Xu to "hold in strictest confidence, and not to use except for the benefit of [Plaintiff]" any of these broad categories of confidential information, both during and after his employment.  *Id.*  Defendants thus argue that the contract constitutes a restraint on trade because the confidentiality agreement is not sufficiently tailored to protect Plaintiff's trade secrets.  *See* Mot. at 8.

However, unlike the confidentiality agreement at issue here, the cases cited by Defendants in their motion all considered explicit nonsolicitation or noncompete agreements.  For example, in *Dowell*, the court considered a noncompete clause that "prohibited an employee from rendering

6

services, directly or indirectly, to a competitor where those services could enhance the use or marketability of a conflicting product through the use of confidential information to which the employee had access." *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 578 (2009). Similarly, Defendants' citation to this Court's decision in *Richmond Technologies, Inc.* is inapt, because in that case, the Court found that "the *non-solicitation* and *non-interference* provisions in the Non–Disclosure Agreement are likely to be found unenforceable under California law." *See* Mot. at 8 (quoting *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *18 (N.D. Cal. July 1, 2011)). In that same decision, this Court also found that the provision barring "the use of confidential source code, software, or techniques . . . is likely enforceable." *Id.* at *19. Finally, on reply, Defendants also cite *Western Air*, in which a court found unlawful an employment provision entitled "Restrictions on Competition" that included both a nonsolicitation clause and a noncompete clause. *W. Air Charter, Inc. v. Schembari*, No. 2:17-cv-00420-AB (KSx), 2017 WL 7240775, at *1 (C.D. Cal. Dec. 14, 2017). None of these cases apply here because they all involve explicit restraints on trade, such as nonsolicitation and noncompete agreements, rather than run-of-the-mill confidentiality provisions.

As a result, the Court finds that this case is more analogous to *SPS Technologies, LLC v. Briles Aerospace, Inc.*, No. CV 18-9536-MWF (ASX), 2019 WL 6841992 (C.D. Cal. Oct. 30, 2019). There, in response to a plaintiff's claim that the defendant breached his employment agreement, the defendant argued that the agreement's broadly worded confidentiality provisions were void under section 16600. *Id.* at *12. The *SPS* court acknowledged that even though the contract did not contain any express noncompete agreement, the agreement could nonetheless be invalid under section 16600 if it "imposed a restraint of a substantial character." *Id.* (citing *Golden v. California Emergency Physicians Med. Grp.* (*Golden I*), 782 F.3d 1083, 1090–92 (9th Cir. 2015)). The *SPS* court would therefore have to assess whether the "restraining effect [is] significant enough that its enforcement would implicate the policies of open competition and employee mobility that animate section 16600." *Id.* (quoting *Golden v. California Emergency Physicians Med. Grp.* (*Golden II*), 896 F.3d 1018, 1024 (9th Cir. 2018)). However, because such

1   an analysis would involve a "fact-intensive inquiry" in that case, the Court could not determine as

2   a matter of law whether section 16600 applied and denied the defendant's motion to dismiss that

3   count. *Id.*

4       So too here.  Unlike cases that considered express restraints on trade, including

5   noncompete provisions or nonsolicitation provisions, the instant breach of contract claim merely

6   covers a confidentiality agreement. *See* PIIA.  Although the Ninth Circuit has held that

7   application of section 16600 does not require any express restraints of trade, the Ninth Circuit has

8   also acknowledged that whether such a provision "impose[s] a restraint of a substantial character"

9   may require "fact-finding" or further development of the record. *Golden I*, 782 F.3d at 1091,

10   1093.

11       Accordingly, the Court declines to hold as a matter of law that the confidentiality

12   provisions of the PIIA are unenforceable pursuant to section 16600.

13       **2.   Plaintiff Fails to Plead the Element of Breach**

14       Defendants next argue that the Court must dismiss Plaintiff's breach of contract claim

15   because Plaintiff failed to adequately plead the element of breach.  Mot. at 9–10.  The Court

16   agrees.

17       To state a claim for breach of contract under California law, a plaintiff must plead facts

18   establishing the following elements: "(1) existence of the contract; (2) plaintiff's performance or

19   excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the

20   breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).  As to the third

21   element, Defendants' breach, Plaintiff merely alleges that Xu "breached the PIIA through his

22   unauthorized use of Magic Leap's Confidential Information in starting Nreal as a business and

23   creating and promoting and Nreal Light products."  Compl. ¶ 40.  Elsewhere in the complaint,

24   Plaintiff also alleges that, "[o]n information and belief, Mr. Xu used his knowledge of Magic

25   Leap's Confidential Information, including but not limited to the Confidential Designs, to make

26   production and design decisions at Nreal and to guide the development of spatial computing

27   products intended for sale." *Id.* ¶ 20.  Although these allegations explain *why* Xu allegedly

28

United States District Court
Northern District of California

8

breached the PIIA, these allegations fail to explain *how* Xu breached the PIAA.  In fact, Plaintiff's complaint is devoid of any allegation as to what specific "confidential information" Plaintiff believes that Xu used to start Nreal or to create and promote the Nreal Light.  In the absence of any specific allegation, the Complaint conclusorily recites the "breach" element of Plaintiff's breach of contract claim, which is inadequate to state a claim for breach of contract.  *See Iqbal*, 556 U.S. at 678 (holding that a complaint is insufficient "if it tenders "naked assertion[s]" devoid of "further factual enhancement") (citing *Twombly*, 550 U.S. at 557).

Defendants are thus correct that the instant case closely resembles this Court's decision in *Sricom, Inc. v. EbisLogic, Inc.*, No. 12-CV-00904-LHK, 2012 WL 4051222, at *6 (N.D. Cal. Sept. 13, 2012).  In that case, the plaintiff alleged that the defendants had violated a confidentiality agreement that required the parties to "regard and preserve as confidential any and all [information] shared by each other."  *Id.* at *5.  With respect to the element of breach, the plaintiff alleged that the defendants had improperly disclosed "customer information, employee information, and pricing information."  *Id.* at *6.  The Court found that such an allegation "amounted to a conclusory assertion that there has been a breach, with no factual support."  *Id.* Accordingly, the Court dismissed the plaintiff's claim that defendants had breached the parties' confidentiality agreement.  *Id.*

Here, Plaintiff alleges the breach element with even less specificity.  Plaintiff's overly broad allegation that Xu misused "Confidential Information, including but not limited to the Confidential Designs," Compl. ¶ 20, contains even less factual substance than the complaint in *Sricom*.  *Compare id., with Sricom*, 2012 WL 4051222, at *6 (dismissing breach of confidentiality claim based on allegation that defendant disclosed "customer information, employee information, and pricing information").

Nor do Plaintiff's excuses for inadequately pleading breach withstand scrutiny.  Plaintiff argues that the Complaint need not "identify [Plaintiff's] confidential code-named projects in a publicly filed complaint."  Opp'n at 8.  Although Plaintiff need not spell out the exact details of Plaintiff's confidential designs in order to adequately plead breach, Plaintiff must do more than

United States District Court
Northern District of California

1    simply state that Xu breached the confidentiality agreement by disclosing confidential

2    information.  *See, e.g.*, *Snapkeys, Ltd. v. Google LLC*, --- F. Supp. 3d ---, No. 19-CV-02658-LHK,

3    2020 WL 1043629, at *4 (N.D. Cal. Mar. 4, 2020) (holding breach of confidentiality agreement

4    claim adequately pleaded based on allegation that the defendant provided a third-party competitor

5    with two of plaintiff's prototypes with the plaintiff's "iType keyboard technology fully

6    integrated").  Relatedly, the Court cannot agree with Plaintiff's assertion that "the discovery

7    process . . . will allow Defendants to obtain such information," *id.*, because "[Rule 8] does not

8    unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *See*

9    *Iqbal*, 556 U.S. at 678–79.

10   Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim for

11   breach of contract.  Plaintiffs may amend the complaint to plead additional facts to explain how

12   Xu is alleged to have breached the PIIA.  Because amendment would not be futile, cause undue

13   delay, or unduly prejudice Defendants, and Plaintiff has not acted in bad faith, the Court grants

14   Plaintiff leave to amend this claim.  *See Leadsinger*, 512 F.3d at 532.

15   **B. Claim Two: Fraudulent Inducement**

16   Plaintiff's second claim asserts an interference with contract claim against Defendant Nreal

17   in which Plaintiff alleges that Nreal induced Xu to violate the PIIA.  Compl. ¶ 43–49.

18   Specifically, Plaintiff claims that "Nreal, on its own behalf or through its agents, undertook

19   intentional actions aimed at inducing Mr. Xu to breach the PIIA, or otherwise disrupt Mr. Xu's

20   performance of his obligations under the PIIA."  *Id.* ¶ 46.  Plaintiff further alleges that, "[Nreal's]

21   conduct was fraudulent, malicious, and oppressive, and therefore constitutes the basis for punitive

22   damages."  *Id.* ¶ 49.

23   Defendants argue that the Court should dismiss this breach of contract claim for two

24   reasons.  Mot. at 10–12.  First, Defendants argue that Nreal's claim must be dismissed because it

25   is subject to Rule 9(b)'s heightened pleading standard but fails to allege any fraud with specificity.

26   *Id.* at 10–11.  Second, Defendants argue that, irrespective of whether the claim is subject to

27   heightened pleading standards, the Court should dismiss this claim because Plaintiff does not

28
Case No. 19-CV-03445-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    adequately allege the elements of interference with contract.  The Court addresses each argument

2    in turn below.

3           First, Defendants are correct that Rule 9(b)'s heightened pleading standard for fraud claims

4    applies to Plaintiff's interference with contract claim to the extent that it is based on fraud.  *Id.* at

5    11.  Generally, "[f]raud and malice are not essential elements of an interference with contract

6    claim under California law."  *AlterG, Inc. v. Boost Treadmills LLC*, No. 18-CV-07568-EMC, 2019

7    WL 4221599, at *12 (N.D. Cal. Sept. 5, 2019) (quoting *Quelimane* Co. v. Stewart Title Guar. Co.,

8    19 Cal. 4th 26, 55–56 (1998)).  However, pursuant to California Civil Code section 3294, a

9    plaintiff may allege "oppression, fraud, or malice" as a basis for punitive damages.  To the extent

10   that a claim involves both fraudulent conduct and non-fraudulent conduct, "the allegations of fraud

11   are subject to Rule 9(b)'s heightened pleading requirements" and must be pleaded with

12   particularity.  *AlterG*, 2019 WL 4221599, at *12 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317

13   F.3d 1097, 1104 (9th Cir. 2003)).

14          Plaintiff protests that California law merely requires a showing of "oppression, fraud, *or*

15   malice" in order to trigger punitive damages.  Opp'n at 9 n.5.  However, Plaintiff's Complaint

16   uses the conjunctive rather than disjunctive to describe Nreal's conduct.  *See* Compl. ¶ 49

17   ("[Nreal's] conduct was fraudulent, malicious, *and* oppressive . . . ." (emphasis added)).  "If a

18   plaintiff 'allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of

19   conduct as the basis of a claim . . . [,] the pleading of that claim as a whole must satisfy the

20   particularity requirement of Rule 9(b)."  *AlterG*, 2019 WL 4221599, at *12 (quoting *Vess*, 317

21   F.3d at 1103–04).  Because Plaintiff unambiguously alleged that Nreal's conduct was based upon

22   fraud, Plaintiff must plead the fraudulent conduct that interfered with Plaintiff's contract with

23   particularity, pursuant to Rule 9(b).

24          Plaintiff's pleading falls far short of the particularity requirement.  To satisfy the

25   particularity requirement, a plaintiff alleging fraud "must state with particularity the circumstances

26   constituting fraud" by alleging the "who, what, when, where, and how" of the alleged fraud.  Fed.

27   R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Yet the

28

Case No. 19-CV-03445-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

Court cannot identify in the Complaint any fraudulent act that Plaintiff has alleged Nreal to have committed.  In opposition, Plaintiff attempts to explain "'what' was done and 'how' it was done" by stating that "Nreal, through Xu as its agent, engaged in the improper acquisition, use, and disclosure of Confidential Designs that Xu had acquired by attending internal meetings not directly related to his work at Magic Leap."  Opp'n at 11–12.  Yet this conclusory statement merely echoes Plaintiff's contract claim and does not explain how this course of conduct goes beyond a mere breach of contract claim to give rise to any independent fraud claim.  *See, e.g.*, *Monfort v. Adomani*, No. 18-CV-05211-LHK, 2019 WL 6311378, at *13 (N.D. Cal. Nov. 25, 2019) ("[A] party must generally 'recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.'") (quoting *Food Safety Net Servs. V. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1130 (2012)).  Absent any specific allegation of fraud against Nreal in the Complaint, Plaintiff's claim for interference with contract must fail to the extent that it is based on fraud.

Moreover, to the extent that Plaintiff's interference with contract claim does not rely upon fraud, it nonetheless fails to adequately plead required elements.  Under California law, a claim for tortious interference with contract requires "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F.Supp.2d 957, 979 (N.D. Cal. 2013) (quoting *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal.4th 26, 77 Cal.Rptr.2d 709, 960 P.2d 513, 530 (1998)).  Above, the Court already rejected Defendants' argument that there is no enforceable contract as a matter of law.  However, the Court also held that Plaintiff failed to adequately plead any breach of the contract, which is also an element of Plaintiff's interference with contract claim.  *See id.*  For the same reasons, Plaintiff's interference with contract claim also fails because Plaintiff does not adequately plead how Xu breached the PIIA.

Additionally, the Court agrees with Defendants that Plaintiff has failed to plead what

"intentional acts" Nreal took to induce Xu's breach, which is another element required to state a claim for interference with contract.  Mot. at 12; *see Piping Rock*, 946 F.Supp.2d at 979.  Plaintiff attempts to impute Xu's actions breaching the contract to Nreal because Xu is Nreal's officer.  Opp'n at 11 ("Xu's wrongful use of Magic Leap's Confidential Information and Designs at Nreal is also imputable to Nreal.").  However, such allegations impermissibly conflate breach or disruption of the contractual relationship, which is one element of the interference with contract claim, with the defendant's *inducement* of the breach or disruption, which is a separate, distinct element.  *See, e.g.*, *Willcox v. Boeing Military Airplane Co.*, No. 87-1015-C, 1989 WL 107728, at *8 (D. Kan. Aug. 23, 1989) (granting summary judgment in defendant's favor because the interference with contract claim asserted that the same conduct by the employee constituted both the breach of contract and the inducement).  Accordingly, the Court finds that Plaintiff has also failed to adequately plead "defendant's intentional acts designed to induce a breach or disruption of the contractual relationship."  *See Piping Rock*, 946 F.Supp.2d at 979.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim for interference with contract.  Because amendment would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiff has not acted in bad faith, the Court grants Plaintiff leave to amend this claim.  *See Leadsinger*, 512 F.3d at 532.

**C. Claim Three: Constructive Fraud**

In Plaintiff's third claim, Plaintiff alleges that Defendants Xu and Nreal are both liable for constructive fraud for failing to disclose Xu's actions to establish Nreal as a competitor to Plaintiff.  Defendants argue that Plaintiff fails to state a constructive fraud claim either directly or indirectly via accomplice liability.  Mot. at 13–16.  The Court agrees.

"Constructive fraud arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice."  *Cont'l D.I.A. Diamond Prod., Inc. v. Dong Young Diamond Indus. Co.*, No. C 08-02136 SI, 2009 WL 330948, at *3 (N.D. Cal. Feb. 10, 2009) (quoting *Tyler v. Children's Home Society*, 29 Cal. App. 4th 511, 548 (1994)).  "The essence of a fiduciary or confidential relationship is that the parties do

1    not deal on equal terms, because the person in whom trust and confidence is reposed and who

2    accepts that trust and confidence is in a superior position to exert unique influence over the

3    dependent party." *Id.* (quoting *Barbara A. v. John G.*, 145 Cal. App. 3d 369, 383 (1983)).  Thus,

4    the elements of a constructive fraud claim are "(1) a fiduciary or confidential relationship; (2)

5    nondisclosure (breach of fiduciary duty); (3) intent to deceive, and (4) reliance and resulting injury

6    (causation)." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1131 (2014)

7    (quoting *Younan v. Equifax Inc.* 111 Cal. App. 3d 498, 516 n.14 (1980)).

8         As an initial matter, the Court already rejected above Defendant's invitation to void the

9    PIIA as an unlawful restraint on trade pursuant to California Business and Professions Code

10   section 16600.  The PIIA thus requires Xu to keep "in strictest confidence" broad categories of

11   information that Plaintiff deems confidential.  *See* PIIA § 2.  For purposes of the instant motion,

12   the Court assumes that the PIIA suffices to establish a "confidential relationship" as required for

13   Plaintiff's constructive fraud claim.  *See, e.g.*, *Gen. Am. Life Ins. Co. v. Rana,* 769 F. Supp. 1121,

14   1127 (N.D. Cal. 1991) ("Constructive fraud often exists where the parties to a contract have a

15   special confidential *or* fiduciary relationship . . . .") (quoting *Mary Pickford Co. v. Bayly Bros.,*

16   *Inc.*, 12 Cal. 2d 501, 525 (1939) (emphasis added)).

17        Even assuming that a confidential relationship exists, the parties dispute whether Xu's

18   failure to disclose must violate a duty directly imposed on him by the PIIA.  Specifically,

19   Defendants argue that Plaintiff failed to show that "Xu had a duty to disclose his purported

20   assistance of Nreal," because the PIIA "does not contain such a disclosure requirement."  Mot. at

21   13.  Plaintiff responds that the duty to disclose "is *not* an element of constructive fraud; rather it is

22   inherent to the confidential (or fiduciary) relationship."  Opp'n at 13.  However, Plaintiff's only

23   citation discusses the duty to disclose with respect to a fraudulent concealment claim, not a

24   constructive fraud claim.  *Id.* (citing *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1102 (N.D.

25   Cal. 2017)).  Unlike a constructive fraud claim, a fraudulent concealment claim *does not* require

26   any confidential relationship and may involve a duty to disclose in other circumstances, such as if

27   "defendant has made a representation which was likely to mislead due to the nondisclosure."  *See*

28

Case No. 19-CV-03445-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    *MH Pillars Ltd.*, 277 F. Supp. 3d at 1102.

2        By contrast, as the Court explained above, constructive fraud "arises on a *breach of duty*

3    by one in a confidential or fiduciary relationship to another." *Cont'l D.I.A. Diamond Prod., Inc.*,

4    2009 WL 330948, at \*3 (emphasis added) (quoting *Tyler*, 29 Cal. App. 4th at 548).  Plaintiff's

5    citations are inapposite because those cases involve allegations, for example, that an individual

6    breached "duties of confidence" that were explicitly imposed by a nondisclosure agreement.  *See,*

7    *e.g.*, Opp'n at 13 (citing *Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.*, 11-

8    CV-1890-H (JMA), 2011 WL 5025178, at \*9 (S.D. Cal. Oct. 21, 2011)).  However, Plaintiff does

9    not identify, and the Court cannot locate, any constructive fraud claim in which a court has

10   imposed duties based on a contractual relationship that were not actually contained within the

11   contract.  *See* Opp'n at 12–13.  Thus, where a constructive fraud claim is based solely on a

12   contractual relationship, a court must consider whether the alleged nondisclosure breached any

13   duty contained in the contract.  *See, e.g.*, *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d

14   376, 384 (D. Del. 2012) (dismissing constructive fraud claim because "[the plaintiff] did not allege

15   . . . that [the defendant's] alleged nondisclosure of its relationship with Cisco's competitor

16   breached any clause of the NDA or other duty thereunder").  Absent any such duty, a plaintiff

17   cannot establish constructive fraud.  *Id.*; *see also Prakashpalan*, 223 Cal. App. 4th at 1131

18   (explaining that the nondisclosure must also constitute a "breach" of a duty in order to give rise to

19   a constructive fraud claim).

20       Here, Plaintiff alleges that the confidential relationship arises solely by virtue of the PIIA.

21   Compl. ¶ 51.  Plaintiff alleges that Xu breached his duty to disclose that he:

22       (1) intended to and did in fact form and establish a directly competing company
         founded to develop and exploit Confidential Information, including the Confidential
23       Designs; (2) created a social media presence and brand promoting Nreal; (3) entered
         into funding agreements with investors for the purpose of funding his new company;
24       and (4) promoted the Nreal Light as a lawfully designed product.

25   *Id.* ¶ 53.  Yet Plaintiff does not identify a single clause of the PIIA that would require Xu to

26   disclose any of those details.  *See id.*; Opp'n at 13.  Instead, as Plaintiff does not dispute, the PIIA

27   merely prohibited the improper use or disclosure of confidential information but does not impose

United States District Court
Northern District of California

28

15

United States District Court
Northern District of California

1  any affirmative duty to disclose his post-employment plans.  *See* PIIA § 2; Reply at 7.  Because

2  Plaintiff fails to establish that there was any nondisclosure in breach of a duty owed to Plaintiff,

3  Plaintiff fails to state a claim for constructive fraud.  Similarly, absent any direct liability by Xu

4  for constructive fraud, there can be no accomplice liability for Nreal under conspiracy or aiding

5  and abetting theories.  Compl. ¶ 56; s*ee Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566,

6  574 (2005) ("The unifying principle under either theory of recovery, civil conspiracy or aiding and

7  abetting, is that the [accomplice] liability depends upon the actual commission of a tort.").

8  Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim for

9  constructive fraud.  The Court cannot say that amendment would be futile, cause undue delay, or

10  unduly prejudice Defendants, or that Plaintiff has acted in bad faith.  *See Leadsinger*, 512 F.3d at

11  532.  The Court therefore grants Plaintiff leave to amend this claim.

12  **D.  Claim Four: Unfair Competition**

13  In Plaintiff's fourth claim, Plaintiff alleges that Defendants violated California's unfair

14  competition law ("UCL"), Cal. Bus. & Prof. Code § 172000.  "California's UCL provides a cause

15  of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Backhaut v.*

16  *Apple, Inc.*, 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014) (citing Cal. Bus. & Prof. Code § 17200).

17  Plaintiff alleges that Defendants' conduct violated all three of the above prongs of the UCL

18  because Defendants "constructively defrauded Magic Leap by failing to disclose that he had built

19  a business based on false premises, false representations to the public, and unlawful reliance on

20  Magic Leap Confidential Information."  Compl. ¶¶ 59–60.

21  In its opposition brief, Plaintiff abandons the "unfair" prong claim.  *See* Opp'n at 17

22  ("[Magic Leap] states a UCL claim under both the fraudulent and unlawful prongs.").

23  Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's "unfair prong" UCL

24  claim.

25  Defendants argue that Plaintiff fails to state a claim under either the fraudulent or the

26  unfair prongs of the UCL.  Mot. at 16–19.  The Court addresses each prong in turn below.

27

28

16

### 1. Fraudulent Prong

"The California Supreme Court has held that a business practice is 'fraudulent' in violation of the UCL if "members of the public are likely [to be] deceived by the practice." *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 865 (N.D. Cal. 2014) (quoting *Comm. on Children's Television v. Gen. Foods. Corp.*, 35 Cal.3d 197, 214 (1983), *superseded by statute on other grounds as stated in Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223 (2006)). Accordingly, the only conduct that may constitute a violation under the fraudulent prong of the UCL is fraud against the public, and fraud against a corporate-competitor is not generally pertinent to a claim under the "fraudulent" prong. *See id.* at 866 (N.D. Cal. 2014) ("[A] corporate-competitor 'is not entitled to the protection of [the fraudulent] prong of § 17200 because it is not a member of the public or a consumer entitled to such protection. The Court has identified no case under the "fraudulent" prong of § 17200 allowing one competitor to proceed against another on the basis that the defendant deceived him.'") (quoting *Watson Labs, Inc. v. Rhone–Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001)). "The heightened pleading standard of Rule 9(b) applies to UCL claims that are 'grounded in' or 'sound in' fraud." *Codexis, Inc. v. Enzymeworks, Inc.*, No. 16-CV-00826-WHO, 2016 WL 4241909, at *5 (N.D. Cal. Aug. 11, 2016) (citing *Kearns v. Ford Motor Co.* 567 F.3d 1120, 1125 (9th Cir. 2009)).

As discussed above, the Court must disregard Plaintiff's numerous assertions that Defendants deceived Plaintiff, who is a "principal competitor" and not a general member of the public. Compl. ¶ 54; *see Capella*, 77 F. Supp. 3d at 865. Thus, allegations such as Plaintiff's "constructive fraud" allegation that Xu failed to disclose Xu's intentions to form a separate business, Opp'n at 18, are not pertinent to Plaintiff's fraudulent prong claim. Instead, the Court may only examine the alleged "false representations to the public," Compl. ¶ 59. As far as the Court can gather, the allegation that Defendants deceived the public is that they advertised a product that is "strikingly similar to confidential Magic Leap designs and confidential and proprietary information to which [Xu] had access as an employee." Opp'n at 18 (citing Compl. ¶¶ 1–3, 17). However, such an allegation is inadequate under Rule 9(b)'s heightened pleading

Case No. 19-CV-03445-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

1    standard.

2        Plaintiff's only case to support their "fraudulent" prong theory is *Codexis*, which is clearly

3    distinguishable.  2016 WL 4241909.  In that case, the Court held that a "deliberate plan to copy

4    [the plaintiff's] enzymes, to misappropriate [the plaintiff's trade secrets], and to misleadingly hold

5    out to customers their copied products and technical guidance as their own" sufficiently stated a

6    fraudulent prong UCL claim.  *Id.* at *5.  Further, the plaintiff's allegations met Rule 9(b)'s

7    heightened pleading standards because the plaintiffs identified exactly what was copied by

8    alleging that the defendant markets and sells "kits for ketoreductases and transaminases . . . [which

9    are] 100% molecular copies of Codexis's proprietary enzymes."  *Id.*  "The kits also include[d]

10   'almost verbatim' copies of Codexis's written guidance on the purpose and use of the kits, the

11   laboratory steps that may be taken, equipment that may be used, recommended storage conditions,

12   and methods for analyzing data obtained through kits."  *Id.*  Accordingly, the *Codexis* court held

13   that such allegations were "specific enough to give defendants notice of the particular misconduct

14   which is alleged to constitute the fraud charged so that they can defend against the charge and not

15   just deny that they have done anything wrong."  *Id.* (quoting *Semegen v. Weidner*, 780 F.2d 727,

16   731 (9th Cir. 1985)).

17       The Complaint in this case falls far short.  As the Court explained above, Plaintiff merely

18   provides a conclusory assertion that Defendants "used [their] knowledge of Magic Leap's

19   Confidential Information, including but not limited to the Confidential Designs, to make

20   production and design decisions."  Compl. ¶ 20.  Such a conclusory allegation bears no semblance

21   to the specific allegations in *Codexis* that the "kits for ketoreductases and transaminases" were

22   "100% molecular copies" of the plaintiff's proprietary enzymes, or that the defendant's

23   instructional materials were "almost verbatim" copies of the plaintiff's.  2016 WL 4241909, at *5.

24   As above, such an allegation fails to even meet Rule 8's pleading standard by giving Defendants

25   adequate notice of how they are alleged to have breached the PIIA.  *A fortiori*, such an allegation

26   does not satisfy Rule 9(b)'s heightened pleading standard because it does not identify with

27   particularity what fraudulent conduct Defendants are alleged to have engaged in to deceive the

28

Case No. 19-CV-03445-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    public.

2         Because Plaintiff fails to state a claim under the fraudulent prong of the UCL, the Court

3    GRANTS Defendants' motion to dismiss Plaintiff's fraudulent prong UCL claim.  Because

4    amendment would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiff

5    has not acted in bad faith, the Court grants Plaintiff leave to amend this claim.  *See Leadsinger*,

6    512 F.3d at 532.

7         **2.  Unlawful Prong**

8         The unlawful prong of the UCL prohibits "anything that can properly be called a business

9    practice and that at the same time is forbidden by law."  *Cel-Tech Commc'ns., Inc. v. L.A. Cellular*

10   *Telephone Co.*, 20 Cal. 4th 163, 180 (1999).  Plaintiff concedes that its unlawful prong claim is

11   entirely premised on the claims "alleged in the Complaint," Opp'n at 19, all of which the Court

12   has dismissed above.  Accordingly, the Court also GRANTS Defendants' motion to dismiss

13   Plaintiff's unlawful prong UCL claim.  Because amendment would not be futile, cause undue

14   delay, or unduly prejudice Defendants, and Plaintiff has not acted in bad faith, the Court grants

15   Plaintiff leave to amend this claim.  *See Leadsinger*, 512 F.3d at 532.

16   **E.  Rule 12(b)(2) Dismissal for Lack of Personal Jurisdiction**

17        Although the Court above dismissed all of Plaintiff's claims against Defendant Nreal for

18   failure to state a claim, Defendants also argue in the alternative that the Court lacks personal

19   jurisdiction over Nreal.  Specifically, Defendants argue that Plaintiff has failed to make a prima

20   facie showing of the Court's personal jurisdiction for three reasons: (1) Plaintiff relies on contacts

21   that occurred before Nreal was formed; (2) Plaintiff relies on contacts that occurred after the

22   Complaint was filed on June 17, 2019; and (3) Plaintiff's remaining suit-related contacts do not

23   create a substantial connection with the forum state.  *See* Reply at 12–15.  The Court briefly

24   addresses each argument in turn below in anticipation of an amended complaint.

25        First, Defendants argue that Plaintiff may not rely upon any conduct that occurred prior to

26   Nreal's formation in order to establish personal jurisdiction.  Although the Court agrees that such

27   an argument would be nonsensical, it is not clear that Plaintiff does in fact impute any such

28

United States District Court
Northern District of California

Case No. 19-CV-03445-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

*conduct* to Nreal before it was formed.  Plaintiff does at times appear to conflate Xu and Nreal when arguing that Nreal has minimum contacts with California.  For example, Plaintiff argues that "all of Nreal's tortious conduct is directly related to breaches of a contract—the PIIA—that was executed in California by [Xu,] a then-resident of California working in Magic Leap's Sunnyvale, California location." Opp'n at 21.  However, Plaintiff then clarifies that such conduct helps establish Nreal's *knowledge* that its own activities would impact California.  *See id.*  Although Plaintiff may not improperly impute Xu's conduct to Nreal before Nreal was formed, such knowledge may be relevant to establish whether Nreal purposefully directed its activities toward California.

Second, Plaintiff may not rely on any of Nreal's contacts with California that occurred after June 17, 2019, when the instant suit was first filed.  Plaintiff, for example, states that Nreal participated in an augmented reality exposition in San Jose, California in September 2019.  *See* ECF No. 37-1 ("Stracener Decl.") ¶ 13, Ex. K.  However, the Court's jurisdiction is determined based upon "the state of things at the time of the action brought." *Gillespie v. Prestige Royal Liquors Corp.*, 183 F. Supp. 3d 996, 1002 (N.D. Cal. 2016) (quoting *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004)).  Thus, the only contacts that are relevant to establishing personal jurisdiction are those "contacts occurring prior to the event causing the litigation." *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).  Accordingly, Plaintiff may not rely upon any contacts after June 17, 2019 to establish the Court's personal jurisdiction over Nreal.

Third, Defendants argue that Plaintiff's remaining suit-related contacts do not create a substantial connection with the forum state.  Reply at 12–13.  Plaintiff is "a Delaware corporation with a principal place of business in Plantation, Florida." Compl. ¶ 4.  Nreal is a business entity founded in and conducting business in China. *Id.* ¶ 6.  Defendants correctly note that the Plaintiff must show that "the defendant's allegedly tortious action was 'expressly aimed at the forum.'" Reply at 12 (citing *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015)).  Similarly, Plaintiff must also demonstrate that any intentional conduct caused harm in California. *See Dole Food Co.*

20

*v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002) ("[T]he 'effects' test requires that . . . [an intentional act] caus[e] harm that the defendant knows is likely to be suffered in the forum state."). Courts, including the Ninth Circuit, have "relied in significant part on the principal place of business in determining the location of a corporation's place of economic injury." *Id.* at 1113–14. Because Plaintiff is a Delaware corporation with a principal place of business in Florida, Plaintiff must do more to explain how any suit-related "intentional act [that was] expressly aimed at [California] . . . caused harm that the defendant knows is likely to be suffered" in California. *See id.* at 1111. Merely pointing to Defendant's "marketing, promotion, and sales" in California, some of which occurred after the suit was filed, is insufficient. *Compare* Opp'n at 22*, with Mavrix*, 647 F.3d at 1231–32 (finding "a jurisdictionally significant amount of economic harm suffered" in California where the plaintiff could demonstrate that a "substantial part of the [infringing product's] value" was based in California).

Finally, on reply, Defendants asks that the court disregard portions of the Stracener Declaration filed in support of Plaintiff's opposition, which show that Plaintiff's counsel may have violated Rule 4.2 of the California Rules of Professional Conduct. That rule prohibits certain communications with "[a] current employee, member, agent, or other constituent" of any represented corporation "if the subject of the communication is any act or omission of such person in connection with the matter." *Id.* In the Stracener Declaration, Plaintiff's counsel explains that he used his personal email address to submit an online inquiry to Nreal regarding Nreal's products. Stracener Decl. ¶ 15, Ex. M. It is not clear if such an inquiry actually constituted a communication with any employee of Nreal or merely elicited an automated response. *See id.*, Ex. M. In any event, the Court does not rely upon those portions of the Stracener Declaration and does not otherwise resolve this motion on the grounds of personal jurisdiction.[1]

Because the Court already dismissed with leave to amend Plaintiff's claims for failure to

---

[1] However, the Court admonishes Plaintiff that the Local Civil Rules incorporate the standards of professional conduct of the State Bar Association of California, and that failure to comply may lead to discipline. *See* Civil Local Rule 11-4, 11-6(a).

Case No. 19-CV-03445-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

state a claim, Plaintiff shall also cure the above jurisdictional deficiencies in any amended complaint.  To that end, Plaintiff may continue to take jurisdictional discovery, consistent with all prior discovery orders that have been entered by the Court.  *See, e.g.*, ECF No. 45 (ordering responses to jurisdiction-related interrogatories).

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss with leave to amend.  Plaintiff shall file any amended complaint in accordance with this Order within 30 days of this Order.  Failure to do so, or failure to cure deficiencies identified herein or identified in the instant motion to dismiss, will result in dismissal of the deficient claims with prejudice.  Plaintiff may not add new causes of action or add new parties without stipulation or leave of the Court. Plaintiff is directed to file a redlined complaint comparing the Complaint to any amended complaint as an attachment to Plaintiff's amended complaint.

**IT IS SO ORDERED.**

Dated: June 17, 2020

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

United States District Court
Northern District of California